■ FLORENCE SHAPLEY et al., Appellants, v. STATE OF NEW YORK, Respondent. (Claim No. 44028.)— HERLIHY, J. P. Appeal by the claimants from a judgment of the Court of Claims dismissing the cause of action. On April 12, 1964 the automobile operated by the claimant Florence Shapley in which claimant Benjamin S. Shapley was a passenger was traveling on the Taconic State Parkway when the said automobile apparently skidded, as the result of which claimants were injured. The thrust of the alleged negligence of the State was that dirt or sand or gritty material was upon the highway at or near the scene of the accident. It is alleged that the material was left on the highway following the winter weather and that the State was negligent in allowing it to remain in that condition for some period of time. The present record does not, as found by the Court of Claims, permit a finding of negligence against the State. If there was any such material along the highway near the scene of the accident, there is no showing as to the amount thereof or that it was the proximate or concurring cause of the happening of the accident. From the record it would appear that the claimant Florence Shapley for some unknown reason lost control of the operation of her automobile. Judgment affirmed, without costs. Herlihy, J. P., Reynolds, Staley, Jr., and Gabrielli, JJ., concur in memorandum by Herlihy, J. P. Aulisi, J., dissents and votes to reverse in a memorandum. Aulisi, J. (dissenting). I find myself unable to agree with

the majority. On April 12, 1964, the claimants, who are husband and wife, were on their way to visit their daughter. It was a clear day and the roads were dry. Mrs. Shapley was driving their 1955 Chrysler automobile and the husband was sitting in the rear seat. She testified that while she was driving in the right lane of the two northbound lanes, at about 40 miles per hour, on the northerly left curve of a reverse " S " curve (the road having previously curved to the right), her car skidded. As the trial court stated: She immediately prior thereto had noted dirt on both sides of the travel pavement, some of which was scattered on the highway and some alongside of and on the easterly shoulder. The driving and passing northbound lanes of the Taconic State Parkway were bordered by curbs which had a vertical face with rounded top and eight-to-ten-foot-wide flat turf shoulders extending respectively eastward and westward. The lanes were composed of asphaltic concrete pavement, eleven feet wide, separated by a painted broken reflectorized white line. The curve at which the accident occurred was moderate, its direction was to the northbound driver's left, it had a slight elevation to the right edge of road pavement above the left and was slightly up-grade. The northbound lanes were separated from the southbound lanes by a natural or island mall. Mrs. Shapley stated that when the automobile began to skid she turned the steering wheel to the left since she saw a " dropoff " to the right of the road. The car crossed the northbound passing lane toward the westerly shoulder and mall of the divided Parkway. This area contained a rock outcropping and the vehicle overturned, injuring appellants. The only issue on this appeal is whether the trial court erred in dismissing appellants' claim based on their allegation of negligence by the East Hudson Parkway Authority in failing to remove sand or similar material from the roadway after the snow had melted. Discussing the applicable rules of law, the Court of Claims stated: " To hold that the Authority is expected to clear the road every time it thawed and re-cinder it every time a snow or ice hazard occurred would, in our opinion, charge them with an unreasonably harsh responsibility and risk. (*Armstrong* v. *Bacher,* 280 App. Div. 512.) In the performance of the duty imposed upon the counties to use reasonable care to keep the highways in a reasonably safe condition, they were not bound to exercise extraordinary care to guard against unusual accident (*Roberts* v. *Town of Eaton,* 238 N. Y. 420). In the *Roberts* case the Court (Pound, J.) stated: ' The rule of duty in such cases is one of reasonableness * * * It is not incumbent on the towns to anticipate and guard against every danger that may attach to the operation of automobiles over county highways.' " I disagree with the implications drawn thereby from the *Armstrong* and *Roberts* cases. This is not a case of alleged failure to remove sand during a two or three day interval between heavy storms in the heart of winter. Here, there was more than a 20-day interval. Judicial notice may be taken of the fact that extensive snow storms are unlikely in southeastern New York State after April first. The storm for which the sanding was done in this case was so minor that weather stations at nearby points, albeit lower in elevation, did not record snow. As indicated in the Court of Appeals' reversal of *Armstrong* v. *Bacher* (306 N. Y. 610, 612), with regard to the claim against Cattaraugus County, " the proof relating to the presence of gravel and cinders [sand in the present case] upon the highway presented an issue of fact as to whether the defendant * * * had been guilty of negligence causative of the accident." Unlike *Roberts* v. *Town of Eaton* (238 N. Y. 420, *supra*), this is not a case of an "unusual accident" nor one where the issue concerned a govermental unit's duty to maintain barriers "sufficiently strong to hold a heavy car" from going over a declivity, once the car was off the pavement (p. 422).

This is not a case of country highways. The accident occurred on a major parkway. Also, *Roberts* no longer represents the law in the "barrier" cases and governmental responsibility for safe highways has been extended beyond the restricted view indicated in *Roberts* (see *Sanders* v. *State of New York*, 191 Misc. 248, affd. 274 App. Div. 842, affd. 298 N. Y. 850; *Mason* v. *Town of Andes*, 261 App. Div. 354, affd. 287 N. Y. 616). The State has a duty to maintain the highways in a reasonably safe condition for vehicular traffic (*Canepa* v. *State of New York*, 306 N. Y. 272; *Shaknis* v. *State of New York*, 251 App. Div. 767, affd. *sub nom. Doulin* v. *State of New York*, 277 N. Y. 558). Rather than adopting a rule of law that the Authority should not be expected to clear the sand off the road, the trial court should have applied general tort principles to see if, on the facts of this case, the Authority was negligent. Applying the facts to the law, as I construe it, it is my opinion that sufficient proof was submitted to require a finding of negligence by the State, in the absence of any proof to the contrary. The State did not submit any evidence. Mrs. Shapley testified that, at the accident scene, there was dirt on the pavement. Her husband and passenger testified that after the accident he noticed "there was some sand on the highway. There were no oil streaks." The sand was "in the middle of the right lane and on the right shoulder." At an examination before trial, the transcript of which was read into the trial record, the trooper who investigated appellants' accident gave an affirmative answer when asked, "Did you observe any sand on the roadway or gravel or dirt?" This testimony that there was sand or dirt on the pavement was not contradicted. Nor was the testimony of claimant's expert that the practice is to remove as promptly as possible, once its purpose has been served, sand or gravel put on highways in the winter storms; and that the sand or gravel, once the ice and snow are gone, makes the bare pavement more slippery and could cause a car to skid. The practice of removing the sand was indicated also in the testimony of an officer of the Parkway Authority at an examination before trial, also read into the trial record. The trial court did not find facts contrary to any of this testimony. Appellants also proved that the Parkway had been sanded, most recently, in the accident area on March 18 and March 22, 1964, and that the Parkway records did not indicate whether or not sand had been removed between those dates and April 12. The trial court found that "the proof submitted fails to either reflect the quantity of or identify the dirt seen on the highway * * * as 'sanding' material of the Authority or as debris from another source". I agree that such proof is relevant and desirable, but, on the facts of this case where both occupants of the car were seriously injured and therefore unable or unlikely to collect samples of the sand, I think the absence of further proof is not fatal. It was not necessary for appellants to prove that a regulation or procedure of the Parkway Authority was violated, or to submit further proof that good maintenance practices were not followed. Any uncertainty as to whether or not sand was removed after March 22, 1964, is due to the nature of the Authority's records and should not be held against the appellants. The record does not support the trial court's conclusion that appellants failed to prove Mrs. Shapley's freedom from contributory negligence. Certainly no inference of negligence may be drawn from her action in turning to the left, *after the car began to skid*. This reaction was not unreasonable in light of her testimony that there was a "dropoff" to the right of the road. Even if she did not make the best possible decision, the "emergency rule" applies: "one placed suddenly by another in a position of peril is not to be deemed guilty of contributory negligence for a failure to exercise the best judgment in the emergency". (See *La Plante* v. *State of New York*, 200 Misc. 396, 398, and cases cited therein, affd. 278 App. Div. 739, affd. 303 N. Y. 648;

*Gardner* v. *State of New York,* 206 Misc. 503, 507.) I would reverse, on the law and facts, and order a new trial.